In re criminal contempt proceedings against Joseph J. SLOVENEC, Jeffrey L. White, Pastor Joseph G. Kelley, Kenneth W. Reed and James F. Anderson.

No. Cr. 92–105A.

United States District Court, W.D. New York.

June 26, 1992.

William J. Flynn, Asst. U.S. Atty., Buffalo, N.Y., for Government.

Laurence D. Behr, Buffalo, N.Y., for defendant Slovenec.

Denis A. Kitchen, Jr., Williamsville, N.Y., for defendant White.

A. Lawrence Washburn, Jr., New York City, for defendant Kelley.

William Diggins, Buffalo, N.Y., for defendant Reed.

Robert M. Murphy, Buffalo, N.Y., for defendant Anderson.

## DECISION AND ORDER

ARCARA, District Judge.

## INTRODUCTION

The five defendants in this case, Joseph J. Slovenec, Jeffrey L. White, Joseph G. Kelley, Kenneth W. Reed and James F. Anderson, are charged by notice with criminal contempt of this Court's February 14, 1992 Preliminary Injunction in the case of *Pro–Choice Network of Western New York et al. v. Operation Rescue Western New York et al.*, 799 F.Supp. 1417 (*"Pro–Choice Network"*). The Government has filed a document entitled "Motion to Dismiss" along with a supporting affidavit. For the reasons stated below, the Court interprets the "Motion to Dismiss" and supporting affidavit as a declination to prosecute defendants Reed and Anderson, and relieves the United States Attorney's Office from its responsibilities in this entire action. Further, the Court appoints Michael A. Brady, Esq. and Daniel C. Oliverio, Esq. to prosecute the criminal contempt charges against all five defendants.

## BACKGROUND

On April 28, 1992, plaintiffs in the *Pro–Choice Network* case moved the Court for an Order to Show Cause why the five above-named defendants should not be held in both civil and criminal contempt of the Court's February 14, 1992 Preliminary Injunction in that case. The affidavits submitted by plaintiffs in support of the Order to Show Cause allege that defendants violated the Preliminary Injunction on April 24, 1992 by: (1) sitting on and in, blocking, and impeding ingress to and egress from, the driveway entrance of the Buffalo GYN Womenservices Clinic at 1241 Main Street Buffalo, New York in violation of ¶ 1(a) of the Injunction; (2) demonstrating within fifteen feet of the driveway entrance at the Womenservices Clinic in violation of ¶ 1(b) of the Injunction; and (3) inducing, directing, aiding and abetting others to violate the Preliminary Injunction in violation of ¶ 1(e) of the Injunction. The Court signed the Order to Show Cause on April 28, 1992 and issued arrest warrants for all five defendants.

Defendants Anderson, Slovenec and White were arrested and arraigned before this Court on April 28, 1992. At that time, the Court determined that in view of the record in the *Pro–Choice Network* case and the allegations contained in plaintiffs' affidavits in support of the Order to Show Cause, obtaining acceptable relief in this case through the imposition of civil contempt charges was not feasible. Thus, the Court ordered that defendants be prosecuted for criminal contempt under 18 U.S.C. § 401. The Court provided defendants with oral notice of the charges against them pursuant to Fed.R.Crim.P. 42(b),[1] and referred the case to the U.S. Attorney's Office for investigation and prosecution. The Court ordered the Government to file a written notice, pursuant to Rule 42(b), by May 6, 1992.[2] The Court further ordered that the caption of the notice read:

---

1. Rule 42(b) states, in pertinent part:

 The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest.

2. The oral notice provided by the Court at the arraignment met the notice requirements of Rule 42(b). The purpose of requiring the Gov-

In re criminal contempt proceedings against Joseph J. Slovenec, Jeffrey L. White, Pastor Joseph G. Kelley, Kenneth W. Reed and James F. Anderson.

Defendants Reed and Kelley were arraigned on May 4, 1992. Again, the Court determined that they should be prosecuted for criminal contempt under 18 U.S.C. § 401, provided them with oral notice of the charges against them pursuant to Rule 42(b), and ordered the Government to file a written notice by May 6, 1992 with the same caption as listed above.

On May 6, 1992, the Government filed a written notice, along with a criminal information, charging defendants Slovenec, White and Kelley with criminal contempt under 18 U.S.C. § 402. The captions of the notice and information read:

United States of America,

Plaintiff,

v.

Joseph G. Kelley

Joseph J. Slovenec

Jeffrey L. White

Defendants.

Also on May 6, 1992, the Court received an *ex parte* letter from the United States Attorney ("U.S. Attorney") requesting an additional two weeks to conduct a further review of the evidence and law pertaining to defendants Reed and Anderson.

On May 11, 1992, a status conference was held at which the Court raised several procedural issues. First, the Court noted that, although it had ordered the Government to file a notice against all five defendants, the notice and information filed on May 6, 1992 charged only three of the five defendants. Second, the Court noted that it had ordered that defendants be charged under 18 U.S.C. § 401, not § 402 as was stated in the notice and information filed by the Government. Third, the Court noted that there was never any requirement or order by the Court that the Government file a criminal information. Fourth, the Court noted that the Government failed to comply with the Court's order regarding the caption to be used on the notice. Fifth, the Court noted that the information added trespassing to the list of allegations against the defendants even though none of the affidavits submitted by plaintiffs in support of the Order to Show Cause mentioned trespassing. Finally, the Court noted that the information alleged the wrong date of the alleged violations.

The Court instructed the Government to file a memorandum addressing these procedural matters by May 18, 1992. The Court also requested plaintiffs in the *Pro-Choice Network* case to file a memorandum as *amicus curiae*. The Court further ordered that defendants file any pretrial motions by May 26, 1992.

On May 13, 1992, the Court received another *ex parte* letter from the U.S. Attorney, dated May 11, 1992, addressing the concern that the Court had expressed during the May 11, 1992 status conference as to the inexperience of the Assistant U.S. Attorney assigned as lead counsel in this case.[3]

On May 18, 1992, the Government filed the previously requested memorandum. The *amicus* filed its memorandum on May 19, 1992. Defendants did not file any pretrial motions.

On May 26, 1992, the Court received a third *ex parte* from the U.S. Attorney, dated May 21, 1992. In the letter, the U.S. Attorney stated that "[a]fter a review of the applicable law in this matter, coupled with an exhaustive review of the evidence, the Government feels that it would be inappropriate at this time to proceed with the prosecution of James Anderson and Kenneth Reed." He then cited two reasons for this conclusion. First, he stated that there is insufficient evidence demonstrating that either Anderson or Reed acted in a leadership capacity on April 24, 1992 at the Buf-

ernment to file a written notice was only to provide defendants with a charging document that formalized the oral notice provided by the Court.

3. The Court notes the general inappropriateness of the May 11, 1992 letter.

falo GYN Womenservices Clinic, and that the prosecution of these two individuals, under these circumstances, could lead to an appealable issue based on "selective prosecution." He cited no authority for this proposition. Second, he stated that prosecution of these two defendants would be inappropriate because questions have been raised with respect to their identification that may impact on a successful prosecution. The U.S. Attorney did not state, however, what these questions are or how they would impact on the prosecution. He concluded that "it would not be appropriate for [his] office to commence a prosecution against these individuals at this time."

It was unclear from the May 21, 1992 letter whether the Government was declining to prosecute defendants Anderson and Reed, or was instead moving to dismiss the charges against them. At a status conference held on May 28, 1992, the Court, in another attempt to put this case in a proper procedural posture, asked for the Government's position as to these two defendants. After the Assistant U.S. Attorney was unable to clearly articulate the Government's position, the Court offered him an opportunity to file a motion to dismiss the charges against Reed and Anderson, if appropriate. The Court indicated that such a motion should include affidavits citing any evidentiary or legal issues that would bar prosecution of these two defendants. *See United States v. Derr*, 726 F.2d 617 (10th Cir. 1984).

On June 5, 1992, the Government filed a document entitled "Motion to Dismiss" along with a supporting affidavit. This "Motion to Dismiss" is currently before the Court.

## DISCUSSION

■ Following several opportunities for the U.S. Attorney's Office to clarify its position as to defendants Reed and Anderson, it is still unclear from the "Motion to Dismiss" and supporting affidavit whether the Government is declining to prosecute these two defendants or, instead, is moving to dismiss the charges against

them. For the reasons set forth below, the Court will interpret the "Motion to Dismiss" and supporting affidavit as a declination by the Government to prosecute the criminal contempt charges against defendants Reed and Anderson.

The "Motion to Dismiss" and supporting affidavit are extremely confusing, to say the least. The "Motion to Dismiss" requests that the Court dismiss the charges against all five defendants under 18 U.S.C. § 401, but makes no further request for specific relief. The supporting affidavit, on the other hand, requests that the Court, after dismissing the charges against all five defendants under 18 U.S.C. § 401, arraign defendants Kelley, Slovenec and White under the information filed by the Government.[4] Neither the "Motion to Dismiss" nor the supporting affidavit expressly request that the charges against defendants Reed and Anderson be dismissed *in toto*. Yet, the affidavit further states that "an additional argument in support of the Motion to Dismiss, as it relates to defendants Kenneth Reed and James Anderson, lies in considerations of equity and the interests of justice." This language would seem to indicate that the Government is moving to dismiss the charges against Reed and Anderson *in toto*.

There is other language in the supporting affidavit, however, indicating that the Government, instead of moving to dismiss the charges against Reed and Anderson, is actually exercising its discretion not to prosecute these defendants. The affidavit states that "the Government is of the opinion that to proceed with a criminal prosecution against them is a misuse of prosecutorial discretion." It later states that "[i]nherent in the decision not to prosecute is a review of other available remedies." This language, combined with the language included in the U.S. Attorney's May 21, 1992 letter to the Court, indicates that the Government is declining to prosecute Reed and Anderson. This conclusion is supported by the fact that the affidavit cites no eviden-

---

**4.** Normally, a movant should include all re- quested relief in the actual motion.

tiary or legal issue that would bar prosecution of either defendant.

■ In the May 21, 1992 letter, the U.S. Attorney asserted that prosecution of Reed and Anderson, in light of their equal culpability with the other seventy-five non-charged individuals who allegedly violated the Preliminary Injunction on the day in question, "may result in an appealable issue based on a selective prosecution argument." No legal authority was cited in support of this selective prosecution argument. In the affidavit in support of the "Motion to Dismiss," the Government apparently abandons the selective prosecution argument, since it was not mentioned, and instead relies on alleged "considerations of equity and the interests of justice." In particular, the affidavit states that after a review of the evidence, the government "submits that the degree of culpability on behalf of Reed and Anderson is indistinguishable from the activity exhibited by approximately seventy-five other individuals on the day and time in question" and that this "evidence as it relates to culpability ... would raise serious questions of equity in the eyes of the trier of fact." Again, there is no authority cited for this proposition.

■ The decision to bring a motion for contempt against some but not all of the individuals who allegedly violated the Preliminary Injunction on April 24, 1992 was totally within the discretion of the *Pro-Choice Network* plaintiffs. They could have moved for contempt against all seventy-five of the alleged contemnors or selected some lesser number at random. Instead, they chose to move against the five individuals whom they apparently felt were the most culpable. A selective prosecution claim can only be successful upon a showing that the decision to prosecute these particular defendants was motivated by invidious discrimination or bad faith. *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985); *St. German of Alaska Eastern Orthodox Catholic Church v. United States*, 840 F.2d 1087, 1095 (2d Cir.1988). There is absolutely no indication in the record that the *Pro-Choice Network* plaintiffs' decision to bring contempt charges against these five defendants, as opposed to the other seventy-five non-charged individuals, was in any way motivated by invidious discrimination or bad faith. While the Government may not think it is fair or equitable that Reed and Anderson should be prosecuted under these circumstances, such a decision is not its to make.

In its supporting affidavit, the Government further suggests that there is an evidentiary issue of misidentification by one of the affiants to the Order to Show Cause "which further advances the Government's concern about the equitable administration of justice." Nevertheless, the Government acknowledges that the identification problem is not fatal to the prosecution of Reed and Anderson. Further, the affidavit does not provide the Court with any information regarding other possible evidence of identification in the Government's possession. It does not appear to the Court that the alleged identification problem involving only one affiant is in any way a bar to the prosecution of Reed and Anderson.

■ The supporting affidavit also asserts that "[i]nherent in the decision not to prosecute is a review of other available remedies" such as civil contempt sanctions. However, as stated earlier, the Court has already expressly determined that obtaining acceptable relief in this case through the imposition of civil contempt is not feasible. It has become increasingly apparent during the *Pro-Choice Network* case that arrest and prosecution under state and local laws and the threat of civil contempt sanctions may not dissuade defendants from continuing to block access to abortion clinics. Moreover, it is clear that civil contempt sanctions would be particularly ineffective in this case where all of the defendants are either individuals of limited means or are currently deeply in debt, thereby rendering them "judgment proof." Defendant Slovenec has represented that he earns only $13,000 a year, has an $11,-000 credit card bill, owes $150,000 in bank loans from real estate transactions, and

has no other tangible assets. Defendant Reed has represented that he earns $28,000 a year, has no other tangible assets, and was in bankruptcy as recently as 1986. Defendant Anderson has represented that he earns $26,000 a year, has no tangible assets except two cars with a total value of $2,300, and is already $8,000 in debt. Defendant White has represented that he earns $27,000 a year, is $20,000 in debt, recently had his car repossessed, and has no other tangible assets. Finally, defendant Kelley has represented that he earns $43,000 a year but his business has recently filed bankruptcy. He does own a home, but it has a $220,000 mortgage on it. Thus, based on this financial information and the record in the *Pro–Choice Network* case, the Court determined that civil contempt was not a feasible option in this case.

 Besides, while the Government may decline to accept the responsibility of prosecuting the criminal contempt charges against defendants Reed and Anderson, it does not have the authority or discretion to unilaterally determine that these defendants should be prosecuted civilly rather than criminally. The Court has independent authority to initiate criminal contempt proceedings against those who violate its orders. As the Supreme Court stated in *Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), "[t]he ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches.... Courts cannot be at the mercy of another Branch in deciding whether [criminal contempt] proceedings should be initiated." *Id.* at 796, 107 S.Ct. at 2131. Thus, once the *Pro–Choice Network* plaintiffs brought the motion for con-

tempt, it was up to the Court to determine whether the defendants should be prosecuted for criminal rather than civil contempt.

Here, the Government, in its supporting affidavit to the "Motion to Dismiss," opines that prosecution of defendants Reed and Anderson, under the circumstances present here, would be "a misuse of prosecutorial discretion." However, under *Young*, the Government does not have "prosecutorial discretion" in this instance. The Court has already initiated criminal contempt proceedings against Reed and Anderson and, absent some evidentiary or legal issue that would bar prosecution, these proceedings must go forward.[5]

If the Government disagrees with the Court and believes that Reed and Anderson should not be prosecuted for criminal contempt, it has the prerogative to decline to prosecute them. *Id.* at 801, 107 S.Ct. at 2134. However, under *Young,* the Court may then appoint a private attorney to prosecute the contempt. "The ability to appoint a private attorney to prosecute a contempt action satisfies the need for an independent means of self-protection, without which courts would be 'mere boards of arbitration whose judgments and decrees would only be advisory.'" *Id.* at 796, 107 S.Ct. at 2132 (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911)). Thus, "courts have long had, and must continue to have, the authority to appoint private attorneys to initiate [criminal contempt] proceedings when the need arises." *Id.* 481 U.S. at 800–01, 107 S.Ct. at 2134. It is clear that in this case, the need has arisen.

In sum, the Court interprets the Government's "Motion to Dismiss" and supporting affidavit as a declination to prosecute defendants Reed and Anderson in this action.

---

**5.** The Court is compelled to clarify a reference contained in the Government's Memorandum of Law on Various Issues dated May 18, 1992 ("Memorandum"). On page 3 of the Memorandum, the Government states:

On April 28, 1992, the Court referred the instant case to the United States Attorney's Office for investigation and *potential* prosecution. *See,* Transcript of Proceedings at pp. 4, 8, 13, 15, 27, 33 and 34.

(emphasis added). When taken in context with the rest of the Memorandum, it is obvious that the word "potential" is the key word in that sentence. Upon reviewing the cited transcript pages, however, the Court does not find one instance where it used the word "potential." Thus, the Court never indicated that the Government had the discretion to unilaterally decide that the defendants should be prosecuted civilly rather than criminally.

The Court will therefore appoint two private attorneys ("Special Prosecutors") to prosecute the criminal contempt charges in this case.[6]

■ Rather than appointing the Special Prosecutors to prosecute only defendants Reed and Anderson, sound judicial administration dictates appointing them to prosecute all five defendants in this action. Because all five are alleged to have violated the Preliminary Injunction on the same day and under the same circumstances, judicial economy and common sense militate in favor of trying all five of them in one trial. However, having two sets of prosecutors in one trial could result in a duplication of efforts, possible conflicts, and confusion on the part of the jury. Having two separate trials is also an unattractive option. Such a procedure could result in unnecessary delay, duplication of efforts, inconsistent results and a waste of judicial resources. Thus, the Court will relieve the U.S. Attorney's Office from any responsibility in this action and appoint two Special Prosecutors to prosecute the criminal contempt charges against all five defendants.[7]

■ In addition to the reasons cited above, the Court finds that the interests of justice will be better served by appointment of Special Prosecutors in this case. In so doing, the Court is not unmindful of the reluctance of the Government to prosecute this action as against all five defendants. As stated earlier, at defendants' arraignments, the Court gave clear and explicit instructions to the Government regarding certain procedural matters. The Court ordered the Government to file a written notice, pursuant to Rule 42(b), against all five defendants charging them with criminal contempt under 18 U.S.C. § 401. It also ordered that the notice be captioned in a certain manner. The Government instead filed a notice and criminal information against only three of the defendants and charged them with criminal contempt under 18 U.S.C. § 402. In addition, the notice and information contained a different caption and an incorrect date of the offense.[8]

When taken separately, these deviations from the Court's clear and unambiguous orders are, for the most part, insignificant. However, when taken together, they clearly show a pattern of indifference to this Court's orders. The Court was never put on notice of any problem with, or need for clarification of, its orders. If the Government had some questions about or problems with the Court's directives, it should have brought them to the Court's attention by making the appropriate motion. The Court is neither inflexible nor infallible and, given an opportunity and adequate reason, could have either clarified or changed its orders. Instead, the Government embarked upon an entirely different course of action without any advance notice to the Court. Such actions, under the circumstances present here, risk undermining the public's confidence in the justice system. Thus, the interests of justice require the appointment of Special Prosecutors in this case.

The Court is also troubled by the assignment of an inexperienced prosecutor as lead counsel in this case. Criminal contempt proceedings of the type involved here are uncommon and present special procedural and substantive issues not normally presented in criminal prosecutions. Even an experienced prosecutor would likely wrestle with the many difficult and unique issues that may arise during the course of this action. In *Young*, the Supreme Court recognized the importance of having experienced prosecutors in criminal contempt proceedings. The Court held

---

6. The Court will appoint two attorneys because there are five defendants in this case; the issues surrounding criminal contempt are complex; and the Speedy Trial Act will require this case to be tried in relatively short order.

7. Obviously, if the Special Prosecutors determine that there is insufficient evidence to proceed with the prosecution against any or all of the defendant(s), they should move to dismiss the charges against the particular defendant(s) under Fed.R.Crim.P. 48(a).

8. While the use of the wrong date of the offense is, in and of itself, of no great moment, it is just another example of the lack of attention to detail by the U.S. Attorney's Office.

that a trial court should ordinarily first request the U.S. Attorney, rather than a private attorney, to prosecute a criminal contempt action so as to "enhance the prospect that investigative activity will be conducted by trained prosecutors...." 481 U.S. at 801–02, 107 S.Ct. at 2135.

In this case, however, an Assistant U.S. Attorney who has only been an attorney since January of this year, and who has never tried a case as an attorney in any court, let alone federal court, has been assigned as lead counsel.[9] While he may be a promising litigator, the Court considers the alleged violations of its Preliminary Injunction to be a serious matter. The wilful violation of a court order strikes at the very heart of our justice system. "If a party can make himself [or herself] a judge of the validity of orders which have been issued, and by his [or her] own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls 'the judicial power of the United States' would be a mere mockery." *Gompers,* 221 U.S. at 450, 31 S.Ct. at 501. Whether the defendants in this case are ultimately found guilty or not is of no importance to this Court. All that is important is that justice be done. As the Supreme Court stated in *Young:*

> The need to vindicate a court's authority is ... satisfied by ensuring that an alleged contemnor will have to account for his or her behavior in a legal proceeding, regardless of whether the party is ultimately convicted or acquitted. A court's ability to institute a contempt proceeding is therefore essential to the vindication of its authority in a way that the ability to determine guilt or innocence is not.

*Young,* 481 U.S. at 796 n. 8, 107 S.Ct. at 2132 n. 8. Justice will not be done if defendants are acquitted simply because they were tried by an inexperienced prosecutor trying his first case. While the U.S. Attorney is certainly free to assign to this case

any assistant he chooses, his assignment of an inexperienced attorney as lead counsel raises concern with this Court. Thus, the interests of justice favor the appointment of Special Prosecutors with prosecutorial experience.

## CONCLUSION

For the reasons stated, the Court interprets the Government's "Motion to Dismiss" and supporting affidavit as a declination to prosecute defendants Reed and Anderson, and it is hereby

ORDERED that the U.S. Attorney's Office is relieved of its responsibilities in this action, and it is further

ORDERED that the May 6, 1992 notice and information filed by the Government are dismissed, and it is further

ORDERED that Michael A. Brady, Esq. and Daniel C. Oliverio, Esq. are appointed to prosecute the criminal contempt charges against all five defendants in this case, and it is further

ORDERED that the U.S. Attorney's Office turn over all videotapes, witness statements, investigative reports and other evidence in its possession, with the exception of anything that can be classified as attorney work-product,[10] to the Special Prosecutors by July 6, 1992, and it is further

ORDERED that the status conference scheduled for June 29, 1992 is adjourned until July 6, 1992, at 4:00 p.m., at which time a new trial date will be set, and it is further

ORDERED that the Special Prosecutors file a new written notice, pursuant to Rule 42(b), by July 9, 1992 and that the new notice should charge the defendants with criminal contempt under 18 U.S.C. § 402,[11] and it is further

ORDERED that the caption on the new notice and on all future filings in this case shall read:

---

**9.** The other attorney assigned to this case is a part-time Assistant U.S. Attorney.

**10.** This exception does not apply to attorney work-product that is also *Brady* material.

**11.** While the Court is not convinced that defendants in this case must be charged under § 402 rather than § 401, the parties and the *amicus* have agreed that § 402 should apply. Thus, the new notice will charge defendants under § 402.

In re criminal contempt proceedings against Joseph J. Slovenec, Jeffrey L. White, Pastor Joseph G. Kelley, Kenneth W. Reed and James F. Anderson.

It is so ORDERED.